## SINGER, NIMICK & COMPANY, LIMITED, ET AL.,
### v.
## HENRY T. STEELE.

*Attorney and Client—Bill for Accounting—Collection of Accounts—Agency—Value of Services—Special Agreement—Practice.*

Upon a bill, against an attorney, for an accounting, it is *held:* That the decree dismissing the bill for want of equity was warranted by the evidence; that it was entirely proper for the defendant to employ his law partner to collect certain claims belonging to the complainant; that the failure of the defendant to preserve a memorandum from which he could give a detailed account of said claims upon demand, was not such negligence as should render him liable to account on the basis of a wilful default; that he was only chargeable with the actual amount collected by him or his agent; that he was properly allowed credit for the reasonable value of the services rendered by him or his agent in collecting or attempting to collect said claims, their collection not being within a certain special agreement to collect and remit the proceeds of certain notes, in lieu of which they were taken; and that, if the evidence did not fairly warrant the finding of the master as to the value of said services, the appellant could not first raise the objection here.

[Opinion filed November 23, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. Gardner, McFadon & Gardner, for appellants.

Mr. John McGaffey, for appellee.

Bailey, J.   This was a bill in chancery,·brought by Singer, Nimick & Company, Limited, a corporation, against Henry T. Steele, for an accounting.   For some fifteen years prior to February, 1878, the defendant had been the attorney at Chicago of the firm of Singer, Nimick & Company, of Pittsburg, Pennsylvania.   About that date said firm placed in his hands, for collection or settlement, a claim in their favor against N. S. Bouton, of Chicago, amounting to $15,720.   After considerable negotiation, the defendant effected a settlement of said claim by taking certain real estate in Illinois, Kansas and Nebraska, valued at $7,500, about $1,120 in money, and about $7,100 in seven notes of the Chicago Plow Company, a corporation then in good credit.   Of said notes, six were for $1,000 each, maturing respectively on the first day of April, June, August, October and December, 1878, and February 1, 1879.   The seventh note was for $1,097.32, maturing April 1, 1879.   As a part of the settlement it was agreed between the defendant and the plow company that said company might take up said notes, or any of them, at any time before maturity, by substituting in their place notes of said company's customers for like amount and maturing within the same time.   For convenience in making the collection or exchange, said notes were drawn payable to the defendant.   Said settlement was reported by him to Singer, Nimick & Company, and by them approved.

In a letter written by the defendant to Singer, Nimick & Company, under date of February 25, 1878, communicating to them certain matters connected with the settlement, he expressed the opinion that every dollar was secured, and asked

permission to retain $321.98 of the cash payment then in his hands on account of fees, saying: "No further charge or claim for services will be made for attending to the collection and remittance of the proceeds." In another letter, dated March 29, 1878, he wrote: "Hitherto I have made no mention of fees and charges for services in the settlement of the N. S. Bouton claim, except the retaining of the $321.98 cash on settlement to apply on same, as advised in mine of 25th ult. In this matter, inasmuch as no further charge is to be made for collecting and remitting as the paper falls due, it has seemed to me that the sum of $500 would be a fair and a proper charge in full for fees and services in this case, and if upon the coming settlement of the Chebanse purchase you will allow me to retain the balance on making remittance, it will be very acceptable, being $178."

Under the arrangement with the plow company, two of the notes, the first and seventh, were surrendered to said company in exchange for notes made by various of its customers, and said notes, with the exception of a small amount, were collected and remitted by the defendant. The second note not being paid at maturity, the defendant induced the plow company to turn over to him as collateral four notes, of which he collected one and compromised the other three, and remitted the proceeds to Singer, Nimick & Company. The total amount thus collected and remitted by the defendant was about $2,850. The remaining notes were not collected, so that there remained uncollected a small balance of the second note and the four remaining notes of $1,000 each.

Some time during the year 1878 the defendant entered into a copartnership with J. Blackburn Jones, a member of the Chicago bar, which partnership continued until 1882. In the summer of 1878, and after the formation of said partnership, Singer, Nimick & Company employed Jones, at a time when the defendant was temporarily absent from Chicago, to go to Kansas to examine some lands for them, but in all subsequent matters they seem to have refused to recognize Jones as their attorney, and to have insisted upon looking to the defendant alone for the transaction of all business connected with

the plow company notes.   On the 3d day of February, 1879, the plow company being badly pressed by its creditors, and being in a failing condition, the defendant induced said company to turn over to him such assets as they had in the form of choses in action and claims against various parties, for the benefit of Singer, Nimick & Company.   There is a dispute as to whether these assets were turned over to the defendant by the plow company in.payment of or as collateral to its said notes, but the court found that they were turned over to him as collateral and not as payment, and the evidence tends to support such finding.   Said claims aggregated a large amount and were supposed to be sufficient to pay the entire indebtedness.   A schedule of said claims was made out and delivered to the defendant, and an assignment thereof executed to the firm of Steele & Jones.

The task of looking up and collecting the claims thus assigned was committed by the defendant entirely to Jones, and he immediately started on a trip through several of the western States, visiting the debtors so far as he could find them and addressing those whom he failed to see, by letter, being absent on such trip one week.   Some months later he made another similar trip, the expenses of both trips being paid by the defendant.   A large portion of said claims proved to be uncollectible, only about $730 in all being collected.   It is claimed that the assignment of said claims was obtained by the defendant wholly without the knowledge or consent of Singer, Nimick & Company, and that the efforts made by the defendant, through his partner, Jones, to collect said claims, was without their knowledge, procurement or approval. Whether this be so or not, it does not appear that they in any way disaffirmed the defendant's act in obtaining said assignment when they learned of it, but on the contrary, it appears that they frequently demanded of the defendant an account of the money collected, and in the bill the complainants claim the benefit of the assignment, and pray that the defendant be required to account for the moneys so collected.

In July, 1881, Singer, Nimick & Company became incorporated under the name of Singer, Nimick & Company,

Limited, and assigned to said corporation their claim against the defendant. The agent of the firm before the incorporation, and the agent of the company afterward, on several occasions, applied to the defendant for a statement of the claims assigned as aforesaid, but as the schedule of said claims had been placed in Jones' custody, together with all other memoranda connected with the matter, the defendant referred the agent to him for information, but said agent refused to see Jones, but demanded an account of the defendant, who personally had nothing to do with said claims and knew nothing of the details in respect to them.

The cause being heard on pleadings and proofs, the court found that the defendant was liable to account to the complainants for the moneys collected on said claims, and that he was entitled to credit for the reasonable value of Jones' services in collecting and attempting to collect the same. The cause was thereupon referred to the master to state the account between the parties upon the principles thus laid down, and the master, in stating the account, charged the defendant with the sum of $730, the amount of the moneys collected, and found the value of Jones' services to be $1,400, thus leaving a balance, in the defendant's favor, of $670. Said report of the master was confirmed by the court, but as the defendant had filed no cross-bill, the court refused to render a decree in his favor for said balance thus appearing to be due him, but dismissed the bill at the complainants' costs for want of equity.

Without attempting to notice in detail the numerous criticisms of appellant's counsel upon both the interlocutory and final decrees, we are of the opinion that the decree is fully warranted by the evidence. It was entirely proper, so far as we can see, for the defendant to employ Jones, his partner, to collect the claims turned over by the plow company. It is not pretended that Jones was not a lawyer of standing and ability, or that he was not entirely competent to perform the duties growing out of such employment, and it is not shown that he was not faithful and diligent in their performance. That he was not more successful was doubtless owing to the character of the claims given him for collection. The evidence shows

that all the moneys collected by Jones were accounted for, and that the defendant had in his hands at the hearing, ready to be delivered to the complainants, all of said claims not collected.

The contention of the complainants seems to be, that by giving over the entire charge of the collection of said claims to another and keeping in his hands no memorandum from which he could give to the complainants, whenever they saw fit to call for it, a detailed account of the nature, description and condition of said claims, the defendant was guilty of such negligence as should render him liable to account on the basis of wilful default, that is, to be held liable to account for all such claims as he might not be able to show on the accounting could not have been collected by the exercise of ordinary diligence. Without attempting to define or classify the cases where an accounting party may be charged on the basis of wilful default, it seems very clear that there are no facts shown here which can invoke an application of the principles which govern cases of that character. No such consequences can follow from the employment of another to collect the claims, so long at least as the agent employed was competent and performed the duties of his agency with faithfulness and diligence. Nor does the fact that the defendant placed in his agent's hands all his memoranda in relation to the claims to be collected, make out a case of wilful default, especially as it is not shown that any prejudice resulted therefrom to the complainants. But even if this were otherwise, the bill is not framed upon the theory of a wilful default, and where that is the case, only ordinary relief can be given. We see no ground for charging the defendant anything beyond the actual amount of the moneys collected by him or his agent.

Was the defendant entitled to credit for the reasonable value of the services rendered by him or his agent in collecting or attempting to collect said claims? The only ground upon which it is suggested that he should have rendered such services without charge is, that at the time of settling the Bouton claim and taking the plow company's notes, the defendant charged $500 for his services and agreed that there should be no further charge for collecting and remitting as said notes should fall

due. At the time that agreement was made, the plow company was in good credit and solvent, and we may fairly conclude that the parties expected the notes to be paid by the maker at maturity, and that it was not within their contemplation that there should be any litigation in the premises. The collection and remittance stipulated for, it would seem, were the collection by mere presentment at maturity, and the remittance of the money as it should be thus paid. But however that may be, the agreement to collect the plow company notes without charge did not embrace within its terms the collection without charge of claims against a great number of parties scattered over a number of States, which the plow company might turn out as collateral to its notes. That service was clearly beyond and additional to what the contract called for.

We can not say that the amount, found by the master to be due the defendant for services, is too large. The evidence fairly warrants said finding, and besides, we are unable to ascertain from the record that the complainant filed any exceptions to the master's report challenging the amount of credits allowed to the defendant. Having failed to except below, he can not be permitted to do so here. But if we were inclined to think that the master's estimate was too large, or that he had included items of services which should have been rejected, it would not follow that the decree is erroneous. The balance of $670 found due him has not been given him by the decree, and the reduction of the master's finding by that sum eliminates all errors in that respect, which, under the evidence, can possibly be claimed.

We find no substantial error in the record. The decree will therefore be affirmed.

*Decree affirmed.*